UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NORTH POINT RX, LLC                                                                    PETITIONER

V.                                              CIVIL ACTION NO. 3:25-CV-20-KHJ-MTP

KEY THERAPEUTICS, LLC                                                                  RESPONDENT
a/k/a KEY THERAPUTICS, INC.

ORDER

Before the Court is Petitioner North Point RX, LLC's ("North Point") [1] Petition to Confirm Arbitration Award, Respondent Key Therapeutics, LLC's ("Key") [9] Second Motion for Extension of Time to File Answer, Key's [13] Motion to Vacate Arbitration Award, and Key's [21] Motion to Strike. The Court denies the [9, 13, 21] Motions; the Court grants the [1] Petition and confirms the arbitral award.

I.   Background

North Point moves to confirm the arbitral award issued in the [1-1] Modified Final Order. [1-1] at 8–9; [1] ¶¶ 15–26.

A timeline sharpens the picture. In 2022, North Point and Key entered into an [17-4] Agreement to commercialize pharmaceutical products. Tedrow Decl. [1-2] ¶ 4. Following some discourse between the parties, Key determined to terminate their [17-4] Agreement in 2023, and North Point filed an arbitration claim. [1-2] ¶¶

7–8;[1] *see also* [17-4] at 32. The original [1-3] Final Order was entered on October 2, 2023. [1] ¶ 13. But later, North Point requested the Arbitrator modify the [1-3] Final Order because of Key's additional harmful that caused further damages and exacerbated ongoing harm resulting from Key's noncompliance. [1] ¶ 13.

> North Point provided evidence . . . that Key improperly blocked North Point's access to a bank account the parties established ('Bank Account') pursuant to the [17-4] Agreement[,] along with evidence that Key had drained the Bank Account of almost all of the revenue generated from the sale of the pharmaceutical products owned by North Point.

[1] ¶ 14 (citing [1-2] ¶¶ 10–16).

So on October 18, 2023, the Arbitrator issued the [1-1] Modified Final Order, citing "Key's failure to comply with the initial [1-3] Final Order." [1] ¶¶ 16–17. On September 16, 2024, North Point timely filed a [1] Petition to Confirm Arbitration Award, seeking the confirmation of the [1-1] Modified Final Order of the International Court of Arbitration. [1] ¶ 17; [1-1] at 1, 10. This [1-1] Order "awarded relief in favor of North Point and against [Key]." [1] at 1. Specifically, under the [1-1] Order

(a) Key is ordered to deposit in the [Bank Account] . . . opened and maintained in accordance with Section 3 of Schedule A to the Agreement . . . the sum of $500,000 . . . within five business days following the date of notification of this [1-1] Modified Final Order[;]

(b) Key is ordered to comply with the requirement in Section 3 that all "gross sales" as defined in the Agreement are deposited in the Bank Account[;]

---

[1] "North Point commenced the Arbitration to compel contractually required actions by Key as part of the commercial wind down process established by the [17-4] Agreement." [1] ¶ 11 (citing [1-2] ¶¶ 4–15).

    (c) Key is enjoined from making any disbursements from, or otherwise encumbering, the Bank Account, except (i) to pay "Commercialization Expenses" as defined in Section 3, or (ii) as otherwise approved in writing by North Point, which approval shall not be unreasonably withheld[;]

    (d) Key is enjoined from prohibiting North Point's access to view transactions occurring with the Bank Account and is ordered to restore North Point's visibility to the Bank Account[;]

    (e) Key is ordered, within three business days after notification of this [1-1] Modified Final order, to execute and submit to the FDA . . . all required documents and information to transfer the NDA . . . and otherwise cooperate with North Point by complying with all requests by North Point in the transfer process set forth in Section 10.3.3 of the [17-4] Commercialization Agreement[.]

[1-1] at 8–9 (cleaned up).

According to North Point, however, "Key has not complied with any of the required items ordered by the Arbitrator except for subsection (e), and even then Key was in violation of the [1-1] Modified Final Order because its compliance was extremely untimely." [1] ¶ 22. "[T]he total amount . . . that Key must deposit back into the Bank Account, in order to comply with the [1-1] Modified Final Order is $2,339,602.88." [1] ¶ 18. So North Point petitioned this Court to confirm the [1-1] Modified Order. *See* [1].

On November 18, 2024, Key filed an unopposed [5] Motion to Extend Deadline to File a Response, which was granted, allowing a 25-day extension. *See* 11/19/2024 Text Only Order. Then two days before the new deadline, Key filed a [9] Second Motion for Extension of Time to File Answer and a First Motion to Stay Proceedings. North Point responded in opposition, arguing Key's attempt "to delay the confirmation and enforcement of a valid final arbitration award" was

3

"unjustified, in contravention of the Federal Arbitration Act ('FAA'), prejudicial to North Point, and r[a]n counter to judicial economy and efficiency." Mem. Supp. Resp. [12] at 1; *see also* Resp. [11].

On January 3, 2025, Key filed both its [14] Reply to the [11] Response and a [13] Motion to Vacate Arbitration Award. In its [14] Reply, Key explains that it objects to the [1] Petition, *see also* Rebuttal [19],[2] and that "the affirmative misconduct and the material omissions of Tyler Tedrow ("Tedrow"), North Point's apparent new President, demonstrate[] why an extension was requested." [14] at 1. And in its [13] Motion and [16] Memorandum in Support, Key argues the Court should vacate the arbitration award because it "was procured by 'corruption, fraud, or undue means' on the part of North Point." [16] at 1–2 (referencing 9 U.S.C. § 10(a)(1)).

In its [17] Response, North Point claims Key's [13] Motion is time-barred and fails "to establish any fraudulent statement made to the Arbitrator or relevant to the arbitration process; fail[s] to show how the allegedly fraudulent statements made prior to and outside the arbitration process are material; and fail[s] to show they exercised due diligence before or during the arbitration proceeding." [17] at 1. Key then replies that North Point "neglected to address" whether Tedrow "had authority to seek arbitration in the first place," and that equitable tolling applies to the three-month statute of limitations set forth by the FAA. Reply [23] at 1, 4–6.

---

[2] The filing of the [19] Rebuttal moots the [9] Second Motion for Extension of Time to File Answer to North Point's [1] Petition.

4

In the same breath, Key also filed a [21] Motion to Strike "an unsworn expert report from Krista Tongring," *id.* at 1, which was attached to North Point's [17] Response. *See* Tongring Statement [17-13]. According to Key, the [17-13] Report is "1) unsworn, 2) fail to comply with [Federal Rule of Civil Procedure] 26[,] and 3) constitutes hearsay[,so] it must be stricken." [21] at 1. In its [24] Response, North Point argues Tongring's [17-13] Statement is "incorrectly referred to as an 'expert report.'" [24] at 1. Specifically, "[t]he [17-13] [S]tatement was provided to correct incorrect and irrelevant personal attacks, and it was given in the context of the confirmation process, which disfavors discovery." [24] at 1. Still, North Point submitted an [24-1] Amended Statement of Tongring. *See id.*

Finally, Key argues that the [24] Response and accompanying [25] Memorandum serve as "a *de facto* sur-reply," and so they are "not allowed by the Local Rules of Civil Procedure without leave of the Court." Reply [26] at 1 (citing L.U. Civ. R. 7(b)). Key explains the Court should strike the [24] Response because it "is outside of the scope of Key's [21] Motion to Strike[,] as well as Tongring's new expert opinion." [26] at 3.

The Court addresses the remaining pending motions below.

II.   Analysis

   A.   [13] Motion to Vacate

The Court turns first to Key's [13] Motion to Vacate the Arbitration Award.

North Point asserts that Key's [13] Motion to Vacate, "filed 15 months after receipt of the [1-1] Modified Final Order, is time[-]barred." [17] at 1. But Key argues

5

that, because "this case is controlled by New York substantive law," under an agreed choice-of-law provision, equitable tolling applies to that limitations period. [23] at 4; *see also id.* at 6. But this is "[n]ot so." *Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 544 (5th Cir. 2016) (explaining a choice-of-law provision does not displace the FAA's enforcement power over an arbitration agreement).

"A choice-of-law provision is insufficient, by itself, to demonstrate the parties' clear intent to depart from the FAA's default rules." *Id.* (cleaned up). And "FAA rules apply absent clear and unambiguous contractual language to the contrary." *BNSF Ry. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 790 (5th Cir. 2015).

> Section 15.6.1 of the [17-4] Agreement requires that it
>
> shall be governed by and construed in accordance with laws of New York, USA, without regards to any conflict of law provisions. Furthermore, and without limiting the generality of the foregoing, the Parties specifically exclude the application of the United Nations Convention on Contracts for the International Sale of Goods.

[17-4] at 32. The [17-4] Agreement "does not expressly reference [New York] arbitration law but instead contains only a choice-of-law provision. This is insufficient to compel the application of [New York's] arbitration standards." *Cooper*, 832 F.3d at 544. Because Key fails to provide "clear and unambiguous contractual language" to displace the FAA through the express incorporation of New York arbitration laws, the FAA applies. *BNSF Ry. Co.*, 777 F.3d at 790.

Section 12 of the FAA imposes stringent procedural requirements on parties seeking to vacate an arbitration award. Pertinent here, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his

6

attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. "[T]he failure of a party to move to vacate an arbitral award within the three-month limitations period prescribed by [S]ection 12 . . . bars him from raising the alleged invalidity of the award as a defense in opposition to a motion brought under [S]ection 9 . . . to confirm the award." *Cigna Ins. v. Huddleston*, 986 F.2d 1418, 1993 WL 58742, at *11 (5th Cir. 1993) (per curiam) (unpublished table decision) (cleaned up); *see also* 5th Cir. R. 47.5.3 ("Unpublished opinions issued before January 1, 1996, are precedent."); *Brown v. Witco Corp.*, 340 F.3d 209, 218 n.8 (5th Cir. 2003) ("As the magistrate judge correctly noted, the FAA's three[-]month statute of limitations period governs the period of time within which a party must file a lawsuit in federal court asking the court to vacate . . . an arbitration award." (cleaned up)).[3]

Still, Key argues the applicability of equitable tolling based on its claim that North Point acquired the arbitral award through means of "corruption, fraud, or undue means"—specifically in the form of false and/or misleading statements from their CEO and President, Tedrow, to Key and the Arbitrator. [16] at 1–2; *see also* [23] at 6. But the Fifth Circuit has rejected this argument "based on the fact that

---

[3] There is a circuit split on this issue. *Compare Cigna*, 1993 WL 58742, at *11 (collecting cases), *with Move, Inc. v. Citigroup Glob. Mkts., Inc.*, 840 F.3d 1152, 1156–58 (9th Cir. 2016) (collecting cases). And the Fifth Circuit is among those which find the three-month limitations period to be final. *See Cigna*, 1993 WL 58742, at *11; *see also Brown*, 340 F.3d at 218 n.8; *Gonzalez v. Mayhill Behav. Health, LLC*, No. 4:21-MC-188, 2022 WL 1185889, at *3–4 (E.D. Tex. Apr. 21, 2022); *Smith v. Shell Chem. Co.*, 333 F. Supp. 2d 579, 585, 588 (M.D. La. Aug. 24, 2004); *Brown v. Ally Fin., Inc.*, No. 2:18-CV-70, 2019 WL 6718672, at *3 (S.D. Miss. Dec. 10, 2019) ("The three-month deadline to challenge an arbitration award is absolute, and is not subject to a 'discovery rule' or 'equitable tolling.'") (cleaned up)).

there is no 'discovery rule' or 'equitable tolling' exception to the requirement in [S]ection 12 of the FAA that the defenses of fraud or impartiality be asserted within three months from the time that the arbitration award is filed or delivered." *Cigna*, 1993 WL 58742, at *11.

Because 15 months passed from the time the Arbitrator delivered the [1-1] Modified Final Order in October 2023 to the time Key filed its [13] Motion to Vacate in January 2025,[4] the [13] Motion is denied as untimely under Section 12.

B. [21] Motion to Strike

Because the Court procedurally dismisses the [13] Motion to Vacate, the [21] Motion to Strike is rendered moot. The [21] Motion therefore is denied, as well.

C. [1] Petition to Confirm Arbitration

The Court next considers North Point's [1] Petition to Confirm the Arbitration Award, starting with its jurisdiction.

1. Jurisdiction

This Court has diversity jurisdiction. Indeed, "the face of the application itself . . . shows that the contending parties are citizens of different States (with over $75,000 in dispute)." *Badgerow v. Walters*, 596 U.S. 1, 9 (2022); *see also* [1] ¶¶ 3–9.

---

[4] Neither side has challenged when the arbitration award was "filed or delivered." *See* 9 U.S.C. § 12. North Point highlights that Key "does not allege that it failed to receive the [1-1] Modified Final Order." Mem. Supp. Resp. [18] at 7 (citing Arbitrator Email [17-5]). So the Court operates under the unrebutted assumption that the award was delivered on October 18, 2023. *See id.*; [1]; [1-1].

8

2. Confirmation

Confirmation is proper under 9 U.S.C. § 9:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9.[5] "There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582, 587 (2008); *see also id.* (explaining Section 9 "carries no hint of flexibility"). Because "[j]udicial review of an arbitration award is extraordinarily narrow," courts "defer to the arbitrator's decision when possible." *OOGC Am., L.L.C. v. Chesapeake Expl., L.L.C.*, 975 F.3d 449, 453 (5th Cir. 2020) (cleaned up). And as discussed, "the

---

[5] "[A]n arbitration award must be sufficiently final before a district court may review it." *Vital Pharms. v. PepsiCo, Inc.*, 528 F. Supp. 3d 1304, 1308 (S.D. Fla. 2020). And although "[t]he Fifth Circuit has not specifically addressed the standard for determining whether an arbitration award . . . is definite," other circuits have provided guidance. *McVay v. Halliburton Energy Servs., Inc.*, 608 F. App'x 222, 225 (5th Cir. 2015). Final and definite arbitration awards have been defined as those which "resolve all the issues submitted to arbitration definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." *Id.* (cleaned up). Final and definite arbitration awards have also been defined as those "sufficiently specific as to be capable of implementation," and those "sufficiently clear and specific [enough] to be enforced." *Id.* (cleaned up). Based on these criteria, the Court finds [1-1] Modified Final Order to be definite, final, and able to be confirmed.

burden of proof is on the party seeking to vacate the award, and any doubts or uncertainties must be resolved in favor of upholding it." *Id.* (cleaned up).

Key's single-sentence [19] Rebuttal states that it objects to North Point's [1] Petition to Confirm Arbitration Award for the reasons set forth in the [13] Motion and the [16] Memorandum. *See* [19]. So although the [13] Motion is dismissed as untimely, the Court briefly addresses the merits, as well.

"Section 10 lists grounds for vacating an award, while [Section] 11 names those for modifying or correcting one." *Hall*, 552 U.S. at 582. Specifically, Section 10 permits vacating an arbitral award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

According to Key, the Court should not confirm the arbitral award because "North Point's CEO and President, Tedrow[,] provided false and/or misleading statements to Key and to the [A]rbitrator." [16] at 2. Simplified, Key argues that the arbitration award was procured by fraud. *Id.*; *see also* 9 U.S.C. § 10(a)(1).

The Fifth Circuit applies a three-prong test to determine whether an arbitral award was procured by fraud. *Karaha Bodas Co. v. Perusahaan Pertambangan*

10

*Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 306 (5th Cir. 2004). To satisfy this test, "(1) [Key] must establish the fraud by clear and convincing evidence; (2) the fraud must not have been discoverable upon the exercise of due diligence before or during the arbitration; and (3) [Key] must show that the fraud materially related to an issue in the arbitration." *Id.* And the "failure to satisfy even one of the three [prongs is] dispositive." *Morgan Keegan & Co. v. Garrett*, 495 F. App'x 443, 447 (5th Cir. 2012) (per curiam) (cleaned up).

Following pages of nonbinding case precedent, *see* [16] at 2–5, Key alleges that North Point fraudulently failed to disclose that Don Rowe ("Rowe"), its CEO at the time of the July 2022 [17-4] Agreement, died in May 2023, and that its current CEO, Tedrow, was under federal investigation for securities fraud. *See* [16] at 5–9; *see also* Sims Statement [13-1] at 1. Key claims that its President, Robert Sims, and former counsel, Joshua McCrory, made repeated efforts to contact Rowe but consistently failed in reaching him. [16] at 6–7. Key also claims it was never informed that Tedrow "'ran the company,'" and it questions Tedrow's authority "to compel arbitration in the first place." *Id.* at 6–9. Overall, Key argues the concealment of this "critical information" amounts to fraud, allowing the Court to vacate the [1-1] Modified Final Order and North Point's arbitral award. *Id.* at 9.

North Point first counters these arguments by reiterating Key's continued efforts "to avoid complying with a valid final arbitration award . . . rightfully entered against Key in an arbitration proceeding." [18] at 1; *see also id.* at 5–6. North Point then highlights that Key's attempt to vacate the arbitral award, *see*

11

[13]; [16], is time-barred. *See* [18] at 6–9. And with respect to the allegations of fraud asserted against it, North Point claims "there is no evidence that the [1-1] Modified Final Order was procured by fraud," "Key has not demonstrated that the alleged fraud was not discoverable by due diligence before or during the arbitration," and "Key has not shown that the alleged fraud was materially related to an issue in the arbitration." [18] at 10–16 (cleaned up); *see also Karaha*, 364 F.3d at 306 (listing the three prongs required to establish an award was procured by fraud under the FAA).

The Court need address only one prong. *See Morgan*, 495 F. App'x at 447. The record fails to establish by clear and convincing evidence that the alleged fraud was materially related to an issue in the arbitration. "[C]ourts interpret Section 10(a) as requiring a nexus between the alleged fraud or undue means and the basis for the arbitrator['s] decision." *Guardian Flight, LLC v. Aetna Health Inc.*, 711 F. Supp. 3d 662, 673 (S.D. Tex. Jan. 5, 2024), *appeal docketed*, No. 24-20051 (5th Cir. Feb 6, 2024). "The statute does not provide for vacatur in the event of any fraudulent conduct, but only 'where *the award was procured* by corruption, fraud, or undue means.'" *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1022 (5th Cir. 1990) (quoting 9 U.S.C. § 10(a)). Where the arbitrator "rests its decision on grounds clearly independent of issues connected to the alleged fraud, the statutory basis for vacatur is absent." *Id.*

North Point appropriately notes that

> [e]ven if Key could establish that North Point or [Tedrow] provided false, misleading, or deceptive statements regarding the health and

12

subsequent death of [Rowe], [Tedrow's] criminal investigation, or [Tedrow's] role as the CEO of North Point, these issues had no bearing or impact on the arbitration or the [1-1] Modified Final Order.

[18] at 12. Any fraudulent conduct on behalf of North Point occurred *before* the arbitration, *see id.* at 13,[6] and "fraud requires a showing of bad faith *during* the arbitration proceedings . . . ." *Morgan*, 495 F. App'x at 446–47 (emphasis added) (cleaned up). The series of events, as listed in the [1-3] Final Order or the [1-1] Modified Final Order, does not mention Rowe, his terminal illness and death, or Tedrow's criminal record. *See* [1-3] at 2–6; [1-1] at 2–5; *see also* [1-2]. And Key does not provide evidence otherwise, failing to establish a nexus between the alleged fraud and the arbitrator's decision.[7]

Key has not provided clear and convincing evidence that the arbitral award here was procured by the alleged fraudulent behavior of North Point.

Following this conclusion,[8] the Court confirms the arbitral award. The parties agreed that any court of competent jurisdiction could enter judgment on the award. [1] ¶ 21; [17-4] at 32. North Point timely applied for a judgment in the

---

[6] In his [13-1] Statement, Key's CEO, Robert Sims, states that Tedrow and North Point "did not act in good faith during the business relationship," before the arbitration. [13-1] at 2; *see also* Sims Suppl. Statement [14-2] at 2. In his [13-2] Statement, Key's former counsel, Joshua McCrory, states that "there was a duty of good faith and fair dealing that should have required Mr. Sims being notified that [Rowe] was sick and that he had died." [13-2] at 4. Rowe's death occurred months before the arbitration. *Id.* at 7. He also states that he "would have advised Key differently prior to the arbitration being filed if [he] had known that North Point had spent months covering up this material fact." *Id.* Once again, this concerns something "prior to the arbitration." *Id.*

[7] Key does not address North Point's argument that the alleged fraud is not materially related to the arbitrator's decision in its [23] Reply.

[8] The Court did not and need not reach [17-13] Tongring's Statement or [24-1] Amended Statement in making its decision on the [13] Motion to Vacate's merits.

13

appropriate district. *See* [1]. North Point properly served Key with the [1] Petition. *See* Summons [2]; Waiver of Service [3]. And the arbitral award has not been "vacated, modified, or corrected as prescribed in [S]ections 10 and 11." 9 U.S.C. § 9.

Because all statutory criteria are satisfied, the Court "must grant" an order confirming the award. *Id.* Thus, the Court grants the [1] Petition and confirms the arbitral award.

III.   Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court DENIES AS MOOT Key's [9] Second Motion for Extension of Time to File Answer, DENIES AS UNTIMELY Key's [13] Motion to Vacate Arbitration Award, and DENIES AS MOOT Key's [21] Motion to Strike. The Court GRANTS North Point's [1] Petition to Confirm Arbitration Award and CONFIRMS the arbitral award. Key shall comply with the Arbitrator's [1-1] Modified Final Order. *See* [1-1] at 8–9; *see also* [1] ¶¶ 24–25. Specifically, Key must:

(a) deposit in the Bank Account opened and maintained in accordance with Section 3 of Schedule A to the Agreement the sum of $500,000;

(b) comply with the requirements in Section 3 and deposit in the Bank Account the amount of $2,339,602.88, which represents the "Gross Sales," as defined in the Agreement;

(c) not make any disbursements from, or otherwise encumber, the Bank Account, except (i) to pay "Commercialization Expenses" as defined in Section 3, or (ii) as otherwise approved in writing by North Point, which approval shall not be unreasonably withheld; and

(d) restore North Point's access to view transactions occurring with the Bank Account and restore North Point's visibility to the Bank Account.

*See* [1] ¶ 24; [1-1] at 8–9 (cleaned up).

The Court will enter a separate final judgment in accordance with 9 U.S.C. § 13.[9] And the Court shall retain jurisdiction until Key complies.

SO ORDERED, this 19th of May, 2025.

s/ *Kristi H. Johnson*<br>UNITED STATES DISTRICT JUDGE

---

[9] In line with that statute, North Point has filed a copy of the [17-4] Agreement and the [1-1] Modified Final Order. See 9 U.S.C. § 13(a)-(b).